Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICK ANGELINI,<br><br>                       Plaintiff,<br><br>vs.<br><br>BERKSHIRE GREY, INC., TOM WAGNER, PETER BARRIS, JOHN K. DELANEY, FIONA P. DIAS, SVEN STROHBAND, and SERENA WOLFE,<br><br>                       Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Nick Angelini ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Berkshire Grey, Inc. ("Berkshire Grey" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Softbank Group Corp. ("Parent"), through merger

- 1 -

vehicle Backgammon Acquisition Corp. ("Merger Sub," and together with Parent, "Softbank") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a March 24, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Berkshire Grey common stock will be converted into the right to receive $1.40 in cash.

3. Thereafter, on May 2, 2023, Berkshire Grey filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Preliminary Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus

in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Berkshire Grey, provided by Berkshire Grey management to the Board and the Board's financial advisor Credit Suisse Securities (USA) LLC ("Credit Suisse") (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Credit Suisse, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been a Berkshire Grey stockholder.

8. Defendant Berkshire Grey is an intelligent enterprise robotics company, provides AI-enabled robotic solutions that automate supply chain operations in the United States, Canada, Japan, and internationally. Berkshire Grey is incorporated in Delaware and has its principal place of business at 140 South Road, Bedford, MA 01730. Shares of Berkshire Grey common stock are traded on the NASDAQ Stock Exchange under the symbol "BGRY".

9. Defendant Tom Wagner ("Wagner") has been a Director of the Company at all relevant times. In addition Defendant Wagner serves as the Chairman of the Board and Chief Executive Officer ("CEO") of the Company.

10. Defendant Peter Barris ("Barris") has been a director of the Company at all relevant times.

11. Defendant John K. Delaney ("Delaney") has been a director of the Company at all relevant times.

12. Defendant Fiona P. Dias ("Dias") has been a director of the Company at all relevant times.

13. Defendant Sven Strohband ("Strohband") has been a director of the Company at all relevant times.

14. Defendant Serena Wolfe ("Wolfe") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16. Non-Party Parent together provides telecommunication services in Japan and internationally. Parent is a Japanese Corporation headquartered in Tokyo on the Tokyo Stock Exchange under the ticker "9984".

17. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

21. Berkshire Grey is an intelligent enterprise robotics company that provides AI-enabled robotic solutions which automate supply chain operations in the United States, Canada, Japan, and internationally.

22. The Company's solutions automate filling ecommerce orders for consumers or businesses, filling orders to resupply retail stores and groceries, and handling packages shipped to fill those orders. The Company serves retail, ecommerce, grocery, package handling, and third-party logistics markets.

23. The Company's most recent performance press release, revealing performance results from the year preceding the announcement of the Proposed Transaction, indicated impressive clinical success. For example, in the November 14, 2022 press release announcing its Q3 2022 financial results, the Company highlighted such successes as an increase in revenues by 26% Year-Over-Year and YTD Revenues Up 93%.

24. Speaking on these positive results, Defendant and CEO Wagner stated, "Revenues were strong, we secured new orders and deployed a record number of Berkshire Grey's AI-enabled

robotic solutions faster and more efficiently at customer sites than ever before." Defendant Wagner continued, speaking on positive future outlook for the Company, noting, "Further, we are making excellent progress towards improving our gross margins, which have been improving steadily throughout the year. We believe we are well positioned for continued growth into 2023 and beyond."

25. Despite this upward trajectory, the Individual Defendants have caused Berkshire Grey to enter into the Proposed Transaction without providing requisite information to Berkshire Grey stockholders such as Plaintiff.

*The Flawed Sales Process*

26. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

27. Notably, the Preliminary Proxy Statement fails to disclose whether the Special Committee of the Board created to run the sales was empowered to veto a potential transaction not in the best interests of shareholders.

28. Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Softbank, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

30. On March 24, 2023, Berkshire Grey issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **BEDFORD, Mass., March 24, 2023** — Berkshire Grey, Inc. (Nasdaq: BGRY), ("Berkshire Grey" or the "Company") today announced that the Company has entered into a definitive merger agreement with SoftBank Group Corp. and its affiliate (together, "SoftBank"). Under the agreement, SoftBank will acquire all of the outstanding capital stock of the Company not currently owned by SoftBank for $1.40 per share in an all-cash transaction valued at approximately $375 million. SoftBank, a strategic investment holding company with stakes in AI, smart robotics, IoT, telecommunications, internet services, and clean energy technology providers, has been an investor in Berkshire Grey since 2019.
>
> "After a thoughtful review of value creation opportunities available to Berkshire Grey, we are pleased to have reached this agreement with SoftBank, which we believe offers significant value to our stockholders," said Tom Wagner, CEO of Berkshire Grey. "SoftBank is a great partner and this merger will strengthen our ability to serve customers with our disruptive AI robotics technology as they seek to become more efficient in their operations and maintain a competitive edge."
>
> "As a long-time partner and investor in Berkshire Grey, we have a shared vision for robotics and automation," said Vikas J. Parekh, Managing Partner at SoftBank Investment Advisers. "Berkshire Grey is a pioneer in transformative, AI-enabled robotic technologies that address use cases in retail, eCommerce, grocery, 3PL, and package handling companies. We look forward to partnering with Berkshire Grey to accelerate their growth and deliver ongoing excellence for customers."
>
> The agreement, which has been unanimously approved by Berkshire Grey's board of directors and represents a premium of approximately 24% to the closing stock price as of March 24, 2023, the last trading day prior to the date of this announcement. The transaction is not subject to a financing condition and is expected to close in the third quarter of 2023, subject to the satisfaction of customary closing conditions, including the approval of Berkshire Grey's stockholders and regulatory approvals.

*Potential Conflicts of Interest*

31. The breakdown of the benefits of the deal indicate that Berkshire Grey insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Berkshire Grey.

32. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. While the Preliminary Proxy Statement provides the following it fails to provide the specific amount of Merger Consideration that these shares will be exchanged for.

|  | Class A Common Stock | | Class C Common Stock[1] | |
| --- | --- | --- | --- | --- |
|  | Number of Shares | Percentage of Class Outstanding | Number of Shares | Percentage of Class Outstanding |
| **Name and Address of Beneficial Owner**[2] **5% Holders (Other than Directors and Named Executive Officers)** | | | | |
| SVF II BG (DE) LLC[3] | 65,567,317 | 27.70% | — | — |
| Entities Affiliated with Khosla Ventures[4] | 56,567,914 | 23.89% | — | — |
| New Enterprise Associates 15, L.P.[5] | 38,226,621 | 16.15% | — | — |
| Canaan X, L.P.[6] | 14,154,207 | 5.98% | — | — |
| Stephen M. Case, Trustee of The Stephen M. Case Revocable Trust UA dated 12/17/1998[7] | — | — | 1,689,071 | 29.38% |
| Theodore J. Leonsis, Trustee of The Theodore J. Leonsis Revocable Trust UA dated 11/13/2008[8] | — | — | 856,300 | 14.89% |
| SBLG Family Investments LLC[9] | — | — | 695,161 | 12.09% |
| Jason Marshall Fish[10] | — | — | 461,746 | 8.03% |
| **Directors and Named Executive Officers** | | | | |
| Thomas Wagner[11] | 8,021,567 | 3.39% | — | — |
| Steven Johnson[12] | 5,979,613 | 2.53% | — | — |

| | | | | |
|---|---:|:---:|---:|:---:|
| Mark Fidler[13] | 1,655,508 | * | — | — |
| Peter Barris[14] | 46,977 | * | — | — |
| Sven Strohband[4] | 56,567,914 | 23.89% | — | — |
| Fiona P. Dias | 46,977 | * | — | — |
| Serena Wolfe | 46,977 | * | — | — |
| John K. Delaney[15] | 2,199,120 | * | 1,390,322 | 24.18% |
| l current directors and executive officers as a group (8 individuals) | 74,564,653 | 31.50% | 1,390,322 | 24.18% |

33.  Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows.

| Name of Executive Officer or Director | Company RSUs (#) | Value of Company RSUs ($) | Vested Company Options (#) | Value of Vested Company Options ($) | Unvested Company Options (#) | Value of Unvested Company Options ($) | Total ($) |
|---|---:|---:|---:|---:|---:|---:|---:|
| **Executive Officers** | | | | | | | |
| Thomas Wagner | — | — | 3,217,933 | 836,035 | 1,972,010 | 512,328 | 1,348,363 |
| Mark Fidler | — | — | 1,552,038 | 403,219 | 931,218 | 241,930 | 645,150 |
| Steven Johnson | — | — | — | — | — | — | — |
| **Directors** | | | | | | | |
| Peter Barris | 113,349 | 158,689 | — | — | — | — | 158,689 |
| Sven Strohband | — | — | — | — | — | — | — |
| Fiona P. Dias | 113,349 | 158,689 | — | — | — | — | 158,689 |
| Serena Wolfe | 113,349 | 158,689 | — | — | — | — | 158,689 |
| John K. Delaney | 91,667 | 128,334 | — | — | — | — | 128,334 |

| Name of Executive Officer | Company Restricted Shares (#) | Value of Company Restricted Shares ($) |
|---|---:|---:|
| Steven Johnson | 2,845,151 | 3,983,211 |

34. Moreover, certain employment agreements with certain Berkshire Grey executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them large cash paydays.

35. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36. Thus, while the Proposed Transaction is not in the best interests of Berkshire Grey, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

37. On May 2, 2023 the Berkshire Grey Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

   a. Adequate information as to if the Special Committee was empowered to veto potential transactions;

   b. Whether the confidentiality agreements entered into by the Company with Softbank differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

   c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Softbank, would fall away; and

   d. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Berkshire Grey's Financial Projections*

39. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Berkshire Grey provided by Berkshire Grey management to the Board and Credit Suisse and relied upon by Credit Suisse in its analyses. The Preliminary Proxy

Statement discloses management-prepared financial projections for the Company which are materially misleading.

40. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Credit Suisse reviewed certain, "certain other information relating to Company, including financial forecasts relating to the Company for the fiscal years ending December 31, 2023 through December 31, 2033…"

41. The Preliminary Proxy Statement therefore should have, but fails to provide, certain information in the projections that Berkshire Grey management provided to the Board and Credit Suisse. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

42. With regard to the *Unaudited Financial Forecast* set of projections, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a. EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest, taxes, and stock-based compensation;

    b. EBIT, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest and taxes;

    c. Net Operating Profit After Tax, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the

        definition for this metric utilized and all underlying inputs, as well as the reasoning for selecting the applied 29% tax rate.

    d. Net Operating Losses Used, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the reasoning for utilization in an amount of 80% of EBIT; and

    e. Annual Savings, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the reasoning for selecting the applied 29% tax rate.

43. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

44. The Preliminary Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

45. This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data for Berkshire Grey being presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Credit Suisse's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Credit Suisse*

47. In the Preliminary Proxy Statement, Credit Suisse describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The specific inputs and assumptions used to determine the utilized multiple reference range of 2.0x to 5.0x as applied to the Company's estimated 2023E Revenue based on the Company Projections.

49. With respect to the *Selected Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The date on which each selected transaction closed;

   b. The value of each selected transaction; and

   c. The specific inputs and assumptions used to determine the utilized multiple reference range of 4.0x to 8.0x as applied to the Company's revenue for the year ended December 31, 2022.

50. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The range of terminal values calculated for the Company;

  b. The specific inputs, metrics, and assumptions used to determine the utilized perpetual growth rates range of 2.0% to 4.0%;

  c. The specific inputs, metrics, and assumptions used to determine the utilized discount rate ranges of 13.0% to 16.0%; and

  d. Berkshire Grey's weighted average cost of capital utilized, and the specific inputs and assumptions used to determine the same.

51. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

52. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Berkshire Grey stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

53. Plaintiff repeats all previous allegations as if set forth in full herein.

54. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

55. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78$l$ of this title.

56. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

57. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

58. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

59. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

60. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

61. Plaintiff repeats all previous allegations as if set forth in full herein.

62. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

63. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

64. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Berkshire Grey's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

65. The Individual Defendants acted as controlling persons of Berkshire Grey within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Berkshire Grey to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Berkshire Grey and all of its employees. As alleged above, Berkshire Grey is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 15, 2023                  **BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*